UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LESHAUN BENJAMIN,

                        Plaintiff,

        v.                                        Case No. 21-cv-677-pp

KYLE DEMERS, LISA STOFFLE
and SERGEANT YORK,

                        Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTIONS TO SUPPORT CLAIMS (DKT. NO. 7), TO APPOINT COUNSEL (DKT. NO. 8), FOR A PRELIMINARY INJUNCTION (DKT. NO. 10), FOR A TEMPORARY RESTRAINING ORDER (DKT. NO. 14), GRANTING MOTION FOR TO ALLOW PLAINTIFF 30 DAYS TO AMEND COMPLAINT (DKT. NO. 17) AND DENYING MOTION TO SUPPORT MOTIONS FOR INJUNCTIVE RELIEF (DKT. NO. 18)**

        Leshaun Benjamin, who is incarcerated at Waupun Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants lost or stole his property while he was in temporary lockup. Ten days after filing his complaint, the court received from the plaintiff the full $402 filing fee. This decision screens the plaintiff's complaint, dkt. no. 1, and resolves his motions to support his claims, dkt. no. 7, to appoint counsel, dkt. no. 8, for a preliminary injunction, dkt. no. 10, for a temporary restraining order ("TRO"), dkt. no. 14, for an order allowing him 30 days to amend his complaint, dkt. no. 17, and to support his previously-filed motion for an injunction, dkt. no. 18.

# I.     Screening the Complaint

## A.     Federal Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff named as defendants sergeants Kyle Demers, Lisa Stoffle and York (whose first name he does not know). Dkt. No. 1 at 1. The plaintiff alleges that on October 9, 2020, he was in temporary lockup at Waupun for a rule violation. Id. at 2. He alleges that at the time, Sergeant Demers "was the acting unit supervisor," though he does not specify which unit Demers supervised. Id. He says that while he was in lockup for almost a week, prison staff did not package and secure his personal property according to prison policy. Id. The plaintiff asserts that on October 14, 2020, when he was released from lockup, a property officer named Abila refused to investigation the location of his documented property. Id. The plaintiff contacted Sergeant York, whom he identified as the property sergeant, but he says York "did not have any regards for writing an incident report or helping [him] retrieve [his] belongings." Id.

The plaintiff says he later learned that on Monday, October 13, Sergeant Stoffle allowed his former cellmate to bring his property to the sergeant desk when it should have been packed by professional staff on Friday, October 9. Id. The plaintiff alleges he "filed inmate complaint and explained [his] position and rec[ei]ved no justice," and that he tried to resolve the issue "with no avail." Id. He alleges that he asked an unnamed restricted housing unit ("RHU") captain, "Why are you guys treating me so crule [sic] and unusual is it because I am black?" Id. at 2–3. The captain allegedly replied, "Yes that is exactly why." Id. at 3. The plaintiff says that he also "addressed [his] issue with the Administration," which "act[ed] as if [his] Entire Inventory Master Log Property List never exist[ed]." Id. The plaintiff alleges that he is missing "major property items" like his television, fan, radio, tablet, legal books and more, which he values at over $700. Id. He says that he had his property in his cell for "two day from Property Room" and that the fact that it is "missing without a trace" does not make sense. Id.

The plaintiff alleges the defendants deprived him of his property in violation of his rights under the Fifth and Eighth Amendments. Id. He says he is suffering hair loss and physical and psychological harm. Id. He alleges he is "being tortured" and feels "as [his] life is in imminent danger behind [his] property issue." Id. He alleges that he asked staff why they were "forcing [him] to sue for justice," and unspecified officers told him, "I don't care it's no[t] comming [sic] out of my pocket." Id.

The plaintiff says that he is asking for "TOR" and a preliminary injunction to keep him safe "from pure hatred from W.C.I. staff." Id. He seeks $17,000 in punitive and compensatory damages. Id. at 4. He also asks that the staff members "be fired for mental anguish and abuse which is ag[a]inst the law according to Wis. Stat. 940.29." Id.

C.  Analysis

The plaintiff's primary claim is that staff at the prison mishandled and lost or stole his property. He alleges that Sergeant York failed to help him retrieve his property, and that Sergeant Stoffle allowed his cellmate to take the plaintiff's property to the sergeants' desk in violation of prison protocol. Claims for deprivation of property are not actionable under §1983 if adequate state remedies are available to redress the deprivation, even if the property is taken intentionally. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), partially overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Mitchell v. Whiteleather, 248 F.3d 1158, at *1 (7th Cir. 2000) (unpublished). The state of Wisconsin "provides several post-deprivation procedures for challenging the taking of property." Cole v. Litscher, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) (citing Wis. Const. art. I, §9; Wis. Stat. §§810, 893). Because the plaintiff has an adequate state remedy to retrieve his property, he must pursue that claim in state court. He may not pursue a claim about his missing property through a lawsuit under §1983 filed in this court.

5

The plaintiff alleges that Sergeant Demers was the acting unit supervisor of an unspecified unit when the plaintiff was in temporary lockup. The court infers that Demers was the supervisor of the unit where the plaintiff was in temporary lockup. It appears that the plaintiff named Demers as a defendant only because Demers was a supervisor during the time the plaintiff's property was mishandled and went missing. But under §1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676; see Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021) ("Supervisors are responsible for what they do themselves, not for what their subordinates do."). To be held liable for their subordinates' conduct under §1983, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). Even assuming that Stoffle or York were supervised by Sergeant Demers, the plaintiff has not alleged that Demers had any knowledge of Stoffle or York's conduct and approved, condoned or ignored it. In fact, he has alleged *nothing* about Demers's involvement and says only that Demers was the acting unit supervisor at the time. That is not enough to hold Demers liable for anyone else's conduct. The plaintiff has not alleged sufficient facts to state a claim against Demers.

To the extent the plaintiff alleges that staff violated prison policy in how they handled his property, he does not state a claim under §1983. Section

1983 protects only against constitutional violations, not violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). The plaintiff may not proceed on a claim that the defendants violated prison policy when handling his property.

The plaintiff also alleges that an unnamed RHU captain confirmed that prison staff were mistreating the plaintiff because he is Black. Under the Equal Protection Clause of the Fourteenth Amendment, incarcerated persons are protected "from invidious discrimination based on race." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). To state such a claim, an incarcerated person must allege that the "defendants intentionally treated him differently because of his race . . . or other proscribed factor." Id. at 719–20 (citing Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016)); see also David K. v. Lane, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting that discrimination must be intentional, purposeful, or have a discriminatory motive).

The Seventh Circuit has clarified that some allegations, even when taken as true, "will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). That is the case with the plaintiff's allegations about the unnamed captain. Even accepting as true his allegations about what the captain told him, the plaintiff has not stated sufficient facts for the court to determine *what* misconduct the plaintiff was subjected to or *who* subjected

him to it. The plaintiff says the unnamed captain works in the RHU and answered yes when the plaintiff asked whether "you guys" were treating him "crule [sic] and unusual" because of his race. Dkt. No. 1 at 2–3. But the plaintiff does not explain who he meant by "you guys." Perhaps he was referring to staff of the RHU or the unnamed captain, none of whom are listed as defendants. The plaintiff says that Sergeant Demers was the "acting unit supervisor" of an unspecified unit and Sergeant York was the property sergeant. Id. at 2. The plaintiff does not say whether Sergeant Stoffle worked in the RHU. The plaintiff does not allege that the unnamed captain had anything to do with his missing property or that any of the named defendants mistreated him because of his race.

Nor does the plaintiff describe the "crule [sic] and unusual" treatment "you guys" were inflicting on the plaintiff. This allegation appears in the complaint right after the plaintiff says that he unsuccessfully attempted to resolve his property issue by filing an inmate complaint. Refusing to respond to an inmate's complaint because of his race could be the basis for an Equal Protection claim. See Taylor v. La Crosse Cty., No. 19-CV-678-JDP, 2021 WL 231068, at *6–7 (W.D. Wis. Jan. 22, 2021) (considering prisoner-plaintiff's claim that jail sergeant denied his grievances based on his race but granting defendant's motion for summary judgment). But that is not what the plaintiff has alleged. More important, the plaintiff did receive a response to his inmate complaint about his missing property. The court knows this because the plaintiff attached to one of his motions a copy of the Office of the Secretary's

decision affirming the Corrections Complaint Examiner's dismissal of his complaint. Dkt. No. 7-1 at 23. The Secretary's decision is the final stage of administrative review of an inmate complaint. Wis. Admin. Code §DOC 310.13(3). That means the plaintiff not only must have received a decision denying or dismissing his inmate complaint about his missing property, but also must have appealed that decision and received this final decision from the Office of the Secretary. Whatever conduct he believes constituted cruel and unusual punishment, it cannot be the failure to respond to his inmate complaint.

This brings us back to the beginning: The plaintiff's allegations about the unnamed RHU captain, even accepted as true, are too "sketchy or implausible," Brooks, 578 F.3d at 581, to allow the court to determine *what* misconduct the plaintiff was subjected to or *who* subjected him to it. He has not stated sufficient facts to assert an Equal Protection claim, and the court will not allow him to proceed on one.

The plaintiff also says he has suffered physical and psychological harm and feels that his life is in imminent danger. But he does not allege who is causing him that harm or what those persons have done to make him fear for his life. To establish liability under §1983, the plaintiff must tell the court who has harmed him and connect those persons to their alleged misconduct. See Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017). The plaintiff has not done that. He names three defendants but does not say what any of them has done to make him fear for his life. He has not alleged, for example, that the

defendants exposed him to inhumane conditions, threatened him or used unnecessary and excessive force against him. He alleges only that his property has gone missing and that he has been unable to get it back. As discussed above, his concern about his property is an issue for the state courts; it does not state a constitutional violation.

To the extent the plaintiff seeks to pursue a state law prosecution against staff who allegedly abused him, the court will deny the request. He cites Wis. Stat §940.29, which provides that abuse of anyone confined in a penal or correctional institution is guilty of a Class I felony. But that statute does not allow a private right of action for an individual to file a civil lawsuit against another individual for damages; it creates *criminal* liability for those who violate it. Only the state, through the district attorney's office, can bring criminal charges; the plaintiff "has no right to compel a criminal prosecution." Wimberly v. Julius, 606 F. App'x 309, 311 (7th Cir. 2015) (citing Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768 (2005), and Sandage v. Bd. of Comm'rs of Vanderburgh Cty., 548 F.3d 595, 597 (7th Cir. 2008)). And this court has no authority to order the district attorney to bring charges against another person. See Benedict v. Eau Claire Area Sch. Dist., No. 08-CV-667-SLC, 2009 WL 440911, at *1 (W.D. Wis. Feb. 23, 2009) (quoting United States v. Batchelder, 442 U.S. 114, 124 (1979)) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

The plaintiff's complaint does not state a plausible claim for relief under §1983. He may not pursue a claim about the taking of his property in federal court for the reasons described above. But with additional detail, it is possible he may be able to state a claim for racial discrimination under the Fourteenth Amendment or for cruel and unusual punishment under the Eighth Amendment. The court will give the plaintiff an opportunity to correct the problems with his complaint by filing an amended complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended

complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

## II.    The Plaintiff's Motions

Since the date it received his complaint, the court has received several motions from the plaintiff.

### A.    Motion to Support Claims (Dkt. No. 7)

First, the court received from the plaintiff a motion "to Support Claims of Abuse by W.C.I. Officials Including Exibits [sic] 1–35 For Courts Record Involving Plaintiff Injustices At Waupun Corr. Inst. Crule [sic] and unusual Punishment." Dkt. No. 7. The plaintiff asks "to produce evidence" in support of his claim about his property "just in case someone is given direct orders to sabotage [his] property." Id. The exhibits attached to the motion include reports from psychological referrals or visits, inmate complaint records, a letter from an attorney, receipts from the plaintiff's purchase of his missing property and other miscellaneous prison documents. Dkt. No. 7-1.

The plaintiff does not explain how these documents are relevant to his claim about his missing property. Even if he did, the court is dismissing that claim because it does not state a cognizable basis for relief under §1983. Because the court is not allowing the plaintiff to proceed on the allegations about his missing property, his exhibits related to that claim are unnecessary

and irrelevant to any claims he might allege in an amended complaint. The court will deny the motion to support his claim.

B. Motion to Appoint Counsel (Dkt. No. 8)

The court also received from the plaintiff a motion for appointment of counsel. Dkt. No. 8. He says he needs the court to appoint counsel because he isn't able to understand "this very difficult process," the issues involved in the case are too complex, he is in segregation and so has only limited access to the law library, he reached out to several lawyers without success, he has limited knowledge of civil law, he has only a sixth grade education and he has serious mental illness issues. Id.; Dkt. No. 9. He says that he has no one to help him because staff has labeled him a snitch, and that he is incarcerated in an "anti inmate" environment, which makes it nearly impossible to keep up with potential evidence. Dkt. No. 9. He also says the case involves "several evil people" and so will likely require expert testimony. Id. The plaintiff included with his motion to support claims the response he received from the Jeff Scott Olson Law Firm, in which a trial consultant told the plaintiff that the office "does not handle small claims cases." Dkt. No. 7-1 at 20. The letter recommends two other attorneys or firms that the plaintiff could contact about his case. Id. at 21. The plaintiff does not say whether he reached out to those attorneys or firms.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706

F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was

unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied either criterion for the court to recruit counsel for him. He says he contacted several attorneys but does not say how many. Other than the Jeff Scott Olson Law Firm, he does not tell the court who he contacted or provide their addresses. Nor did he provide the court with a copy of the letter he sent to any of the attorneys, so the court cannot determine how well the plaintiff communicated the issues in his case or his difficulties pleading his claims. The letter from the Olson law firm suggested that the plaintiff's case belongs in small claims court. That suggests that the lawyer believed that this claim is not appropriate for federal court; finding the plaintiff a lawyer to represent him in federal court on a case that does not belong in federal court would be fruitless.

Even if the plaintiff had demonstrated that he had contacted several lawyers and communicated his issues but that no one had agreed to represent him, he has not demonstrated that, at this stage, he cannot litigate the case effectively himself. Unfortunately, the limitations the plaintiff listed are common for incarcerated persons attempting to litigate cases on their own. As noted above, there are not enough attorneys able and willing to take every case where an incarcerated person would benefit from having counsel. The plaintiff has clearly communicated to the court the issue with his property; that issue does not state a *federal* civil rights claim. Whether he can state a claim related to the other misconduct he alleges remains to be seen. If the plaintiff complies

with this order and files an amended complaint, and if the court allows the plaintiff to proceed on claims alleged in the amended complaint, the court may reconsider recruiting counsel to represent the plaintiff. But at this early stage of the litigation, before the court has allowed the plaintiff to proceed or ordered service on the defendants, the court will not recruit counsel to assist the plaintiff. The court will deny the motion without prejudice.

>      C.      Motion for Preliminary Injunction (Dkt. No. 10)

The court received from the plaintiff a motion for "T.R.O." a preliminary injunction. Dkt. No. 10. The motion says that the plaintiff is bringing his §1983 case for "being retaliated on and being denied appropriate access to the courts, adequate health care (mental and physical), which is causing great stress." Id. at 1. He says unspecified staff have falsified reports against him, abused him, lied to him and assaulted him. Id. He expresses concern that he might not make it to his mandatory release date because of the treatment. Id. The plaintiff says the unnamed prison staff are violating his rights under the First and Eighth Amendment by harassing him, forcing him to live in segregation and destroying his legal work. Id. at 1–2. He alleges that the staff are "randomly harassing" his cell and destroying his legal work. Id. at 2. The plaintiff claims that he has been assaulted three times by correctional staff and by four inmates since he arrived at the institution, and he contends that the prison administration "is promoting all of [his] abusers." Id. at 2. He says that his mail is being interfered with. Id. He asserts that he is not being considered

a human being. Id. The plaintiff did not allege any of these facts or constitutional violations in his complaint.

The plaintiff seeks a preliminary injunction "to ensure that [his] Constitutional Rights are not Further violated and so that [he] will receive proper Due Process." Id. at 1. He specifically asks the court to order him moved "to a treatment facility for PRE-RELEASE PROGRAM[M]ING, ect. [sic]." Id. at 2.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three factors, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

In the context of litigation by incarcerated persons, the scope of the court's authority to issue an injunction (including a TRO) is circumscribed by

the PLRA. See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: [P]rison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff has not satisfied the criteria for obtaining a preliminary injunction. He has not explained why he believes his underlying case is likely to succeed on the merits. The court already has determined that the complaint the plaintiff filed does not state a claim for which a federal court can grant relief; it will allow the plaintiff to proceed only if he files an amended complaint that states a cognizable federal claim. That means his case *will not* succeed on the merits of the complaint now on file. Whether any amended complaint may state a cognizable federal claim remains to be seen, but an as-yet unfiled amended complaint cannot provide the court with a basis for ordering injunctive relief. Because the plaintiff cannot show a likelihood of success on the merits, the court does not need to address the other prerequisites to obtain a preliminary injunction. See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008).

Even if the plaintiff had met the criteria for injunctive relief, the court does not have the authority to grant him the relief he seeks. Decisions about where to house incarcerated persons are not made by courts; they are made by the Department of Corrections, taking into account the crimes for which the incarcerated person was sentenced, his mental and physical condition, the availability of beds, the need for programming and many other factors. The court does not have that information. The court does not have the authority to order the Department of Corrections to place an incarcerated person in a particular facility. The court will deny the plaintiff's motion.

D.   Motion for a Temporary Restraining Order and a Preliminary Injunction (Dkt. No. 14)

Two weeks after the court received the plaintiff's motion for a preliminary injunction, it received from him a motion for a temporary restraining order and preliminary injunction. Dkt. No. 14. Like the earlier motion, this motion describes alleged mistreatment that the plaintiff did not include in his complaint.  He says that unspecified officials at Waupun are denying him medical care and violating his rights under the Eighth Amendment. Dkt. No. 14 at 1. He says that supervisor Torria Van Burren (who was not named or mentioned in the complaint) is denying him adequate mental health care, that he's been denied placement in the Behavioral Health Unit or in protective custody. Id. at 1–2. He says that he has asked to be separated from certain other incarcerated persons to avoid conflict only to be placed back with them, forced to fight and labeled a "terrorist." Id. at 2. He again asserts that his property has been stolen and that a corrections officer named "Birrtieshaw"

called him by a racial epithet. Id. He reiterates that a captain told him he was being mistreated because of his race but now says that captain's name is Rymarkiewicz. Id. He says he has been sexually harassed, has been the subject of voyeurism, has been groped by a corrections officer named Gripatog, has been wakened by Captain Tritt and forced to his knees at gun point because he was on a hunger strike, been lied to, he found foreign items in his food tray after expressing a political opinion, gotten written up for things he did not do, has been denied cleaning supplies, had staff change his PIN account so random thieves could pose as him—the motion goes on extensively. Id. at 2-5. The motion does not describe the injunctive relief the plaintiff is seeking.

The plaintiff also filed a one-page brief and a four-page declaration in support of his motion for a TRO. Dkt. Nos. 15, 16. In the brief, the plaintiff alleges that prison staff assaulted him, causing a cut on his left thigh, and "battered [him] on numerous occa[s]ions." Dkt. No. 15. He says staff has denied him "physical care for injury sustained" and "proper psychological care or adequate healthcare in this facility." Id. He says he is waiting for knee surgery and cannot walk properly. Id.

The declaration reads like a new complaint. Dkt. No. 16. The plaintiff asserts mistreatment by numerous individuals, none of whom are mentioned in his complaint. The declaration prefaces several paragraphs with "As set forth in the complaint in this case," but the conduct he describes in his declaration is *not* alleged in his complaint. He says he was twice assaulted in 2019 and 2020, but that staff ignored his "SPN's," leading him to feel unsafe. Dkt. No. 16 at

¶¶2–4. He does not say what an "SPN" is. He says he filed forms requesting protective custody, but that Captains Tritt and Rymarkiewicz denied them. <u>Id.</u> at ¶5. He asserts that staff stole money from his phone account, assaulted him for no reason, failed to provide adequate mental and physical healthcare and falsely charged him with assaults on staff and other inmates. <u>Id.</u> at ¶¶6–8, 10–11. He says he fears that he "will be killed in W.C.I. out of retaliation for standing up for my constitutional rights." <u>Id.</u> at ¶12. He asks the court, "Please don't let them continue to harm me mentally, physically or biological warfares." <u>Id.</u> It is in this declaration that he describes the relief he is seeking—he asks the court to require the "defendant to arrange for an examination and a plan of treatment by a qualified specialist" and to require "the defendants to carry out that plan of treatment." <u>Id.</u> at p. 16.

Like the previous motion, this motion does not meet the criteria for injunctive relief. The plaintiff has not explained why he is likely to succeed on the merits of his case; he states only that he will succeed because the defendants have been deliberately indifferent to his medical needs. But he did not file a complaint alleging deliberate indifference—his complaint alleged theft of property—and the court is dismissing that complaint because it fails to state a claim for which a federal court can grant relief. The harm the plaintiff describes in this motion, brief and declaration is entirely different from the harm he alleged in his complaint. The plaintiff will not succeed on the merits of the claims alleged in his current complaint. Whether he might succeed on different claims has no bearing on the likelihood of success on the claims he

raised in that complaint. The relief he requests—an exam and a treatment plan—is not related to the injury he alleged in his complaint—theft or mishandling of his property. The plaintiff also does not explain why he will suffer irreparable harm without injunctive relief. He alleges only that, "As a matter of the law, the continuing deprivation of constitutional rights constituted irreparable harm." Id. at 1 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)).

The court will deny this motion. If the plaintiff wishes to file a lawsuit against the many prison officials he mentions in the motion, brief and declaration, he will need to think about which of those claims to pursue against which defendants and whether the claims arise out of a common set of facts. In another case he has pending in this court, the plaintiff previously attempted to bring several unrelated claims in a single lawsuit. The court explained in the first screening order in that case that the plaintiff could not "collect a series of different allegations against a variety of defendants and attempt to pursue them in a single case." Case No. 18-cv-570-pp, Dkt. No. 11 at 6. But that is exactly what he appears to be trying to do in this motion and the attached brief and declaration. These documents describe different actions by different people resulting in different harms and injuries, but the claims do not arise out of the same events. The same rules the court discussed in case 18-cv-570 apply here. The court advises the plaintiff to review its previous order before preparing his amended complaint. He must follow the rules

discussed there and in this order if he wants to proceed on an amended complaint in this lawsuit.

E.    Motion for Order Allowing Plaintiff Thirty Days to Amend
       Complaint (Dkt. No. 17)

Two weeks after the court received the second motion for injunctive relief, it received from the plaintiff a motion for an order granting him thirty days to amend his complaint. Dkt. No. 17. The motion says that the plaintiff is representing himself "(now with some limited Pro Se Legal Aid assistance);" it asks the court to give him thirty days to amend the complaint and asks the court to "pause on screening the complaint while he is in the process of amending it." Id. Because the court already has screened the complaint and decided to give the plaintiff an opportunity to amend it, the court will grant this motion.

F.    Motion to Support TRO & Injunction Previously Filed in Hopes to
       Remain Safe (Dkt. No. 18)

Finally, the court received from the plaintiff a motion to support his request for injunctive relief. Dkt. No. 18. He asks the court to give him a "safe environment to be housed within Wis. State Penal Facility." Id. at 1. This document describes events that took place on August 5-6, 2021—two months *after* the plaintiff filed his lawsuit. The plaintiff says he was denied a shower, that a corrections officer retaliated against him, that the psychological services unit staff abused him and that he has been harassed. Id. at 1-2. He says that he ordered eyeglasses but was told he could not have them because they were contraband, and reiterated his claim that Sgt. York had something to do with

24

his missing property. Id. at 2. He complains about the ventilation in his cell hall. Id. He says he is afraid of ending up in segregation with Demers, who has made statements about poisoning his food. Id. at 3. He says he can't clean his cell during the pandemic. Id. He says he is scared he will die at "at the hands of pure racism" and that "they" killed an inmate last week and said that he took too much insulin. Id. at 4. He ends by saying, "Please don't let me loose my life here." Id. The plaintiff sent with this document several attachments—documents related to his appeal of a contested hearing, documents relating to his alleged failure to appear at a state-court hearing regarding his name change request, a letter from a state senator, inmate request forms and grievances. Dkt. No. 18-1.

The court has denied the plaintiff's request for injunctive relief, so it will deny his motion to support those requests.

The court understands that the plaintiff suffers from mental illness and is struggling. But it appears to the court that every time the plaintiff suffers some mistreatment, or becomes frustrated or afraid, he sends a document to the court. He appears to be trying to add new allegations to his lawsuit with each document he files. The plaintiff filed all the motions referred to above in the two-month period after he filed his lawsuit, before the court even had had the opportunity to screen his complaint. This is not the way litigation works. A plaintiff cannot add new claims every week or so. He cannot seek to add new claims every time he gets angry or afraid. He cannot add new claims every time someone does something that upsets him. The court has received some letters

from the plaintiff, asking when the court will address his claims (and raising new allegations). The court regrets that it has taken the court so long to screen the plaintiff's complaints. But one of the reasons it has taken so long is that the court had to address, not just the plaintiff's original complaint, but all his subsequent motions. The plaintiff must decide which related claims he wants to proceed on in this case and then give the court the opportunity to address them. It is hard to be patient, but the court has other cases and other plaintiffs—it even has another case filed by this plaintiff. Filing new documents every week or two weeks will only slow the process.

## III.   Conclusion

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **DENIES** the plaintiff's motion to support his claims. Dkt. No. 7

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for recruitment of counsel. Dkt. No. 8.

The court **DENIES** the plaintiff's motion for a preliminary injunction and **DENIES** the plaintiff's motion for a temporary restraining order. Dkt. Nos. 10, 14.

The court **GRANTS** the plaintiff's motion for an order allowing him thirty days to amend his complaint. Dkt. No. 17.

The court **DENIES** the plaintiff's motion to support his motions for injunctive relief. Dkt. No. 18.

The court **ORDERS** that if the plaintiff wishes to proceed in this case, he must file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **April 1, 2022**. If the court receives from the plaintiff an amended complaint by the end of the day on Friday, April 1, 2022, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on April 1, 2022, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must mail the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

27

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in him not receiving important documents; in certain circumstances, it may result in the court dismissing his case.

Dated in Milwaukee, Wisconsin this 28th day of February, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**